

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Provider Reimbursement Review Board
7500 Security Blvd.
Mail Stop: B1-01-31
Baltimore, MD 21244
410-786-2671

<u>**Via Electronic Delivery**</u>

James Ravindran
Quality Reimbursement Services, Inc.
150 N. Santa Anita Avenue, Suite 570A
Arcadia, CA 91006

RE:     **EJR Determination QRS 2005-2013 SSI Percentage/Baystate Groups**

PRRB Cases:  15-0384GC *et al*. (54 cases – See **Appendix A**)

Dear Mr. Ravindran:

The Provider Reimbursement Review Board ("Board") has reviewed the Providers' Requests for Expedited Judicial Review ("EJR") filed between March 8 and March 14, 2025 in the above-referenced appeals.  The Board's decision with respect to EJR is set forth below.

I.     <u>**Issue in Dispute – EJR Requests**</u>

The Board received identical individual Requests for Expedited Judicial Review in all fifty-four (54) cases between March 8 and March 14, 2025.  The requests state:

> The Issue for purposes of this EJR request is whether regulation 42 C.F.R. 412.106(b)(1) is invalid by requiring a patient to be due a payment for Supplemental Security Income (SSI) for the month(s) he or she has an inpatient stay in order for the days of such stay to be included in the numerator of the Medicare Fraction for purposes of the Disproportionate Payment Percentage of the Disproportionate Share Hospital (DSH) add-on component of Medicare Inpatient Prospective Payment System (IPPS).[1]
>
>                    . . . .
>
> For purposes of EJR, the Providers take the same position as the petitioner in *Advocate Christ*, namely, that the inpatient days associated with individuals who were found eligible for SSI prior to, or for, the month(s) of their inpatient stay, and who have not

---

[1] *See e.g.,* PRRB Case No. 15-0384GC, Request for Expedited Judicial Review at 1 (Mar. 8, 2025).

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 2

been *terminated* from the SSI program by SSA with respect to
such month(s) should be included in the numerator of the Medicare
Fraction.[2]

. . . .

Note that the Providers are not seeking EJR at this time on the
question of whether CMS properly implements its policy by
requesting only records of those individuals who are assigned one
of only three SSI payment status codes (i.e., C01, M01, and M02)
by the Social Security Administration (SSA) for purposes of the
annual data match between CMS and SSA. However, the Providers
challenge CMS's practice or policy of requesting from SSA only
the three codes mentioned above, and assert that additional
payment status codes should be requested by CMS and used to
determine which inpatient stays, or portion of such stays, should be
included in the numerator of the Medicare Fraction.[3]

As discussed *infra*, there have been several distinct legal issues raised in these group appeals'
issue statements and Requests for EJR.  The group issue statement for Case No. 19-1003GC is as
follows:

**Statement of the Issue:**
Whether the Secretary properly calculated the Provider's [DSH/SSI]
percentage, and whether CMS should be required to recalculate the SSI
percentages using a denominator based solely upon covered and paid for
Medicare Part A days, or alternatively, expand the numerator of the SSI
percentage to include paid/covered/entitled as well as unpaid/non-
covered/eligible SSI days?

**Statement of the Legal Basis**
The Provider(s) contend(s) that the MAC's determination of Medicare
Reimbursement for their DSH Payments are not in accordance with the
Medicare statute at 42 U.S.C. § 1395ww (d)(5)(F)(vi)(I). The Provider(s)
further contend(s) that the SSI percentages calculated by the Centers for
Medicare and Medicaid Services ("CMS") and used by the MAC to settle
their Cost Reports incorporates a new methodology inconsistent with the
Medicare statute.

The Providers challenge their SSI percentages based on the following
reasons:
1. Availability of MEDPAR and SSA records,
2. Paid days vs. Eligible days,

---

[2] *Id.* at 2.

[3] *Id.*

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 3

    3. Not in agreement with provider's records,
    4. Fundamental problems in the SSI percentage calculation,
    5. Covered days vs. Total days and
    6. Failure to adhere to required notice and comment rulemaking
    procedures.

### COVERED DAYS VS. TOTAL DAYS

The statutory language defines the Medicare/SSI fraction as consisting solely of days for patients who were "entitled to benefits under part A" of Medicare. The numerator includes only those Part A days for patients who are also entitled to SSI benefits. The denominator of the Medicare/SSI fraction includes all Part A days. As set forth in the statutory language above, the numerator of the Medicaid fraction consists of days of patients who were both eligible for medical assistance under Title XIX, or Medicaid, and not entitled to benefits under Part A of Title XVII, or Medicare. The denominator for the Medicaid fraction is the hospital's total patient days for the period. CMS considers an individual to be "entitled to benefits under Part A" regardless of whether the days were "covered" or paid by Medicare. This means that now Part C days, Exhausted Benefit days, and Medicare Secondary Payer ("MSP") days are included in the denominator of the Medicare/SSI fraction even when there is no payment by Medicare, which is a departure from the treatment of these days as excluded from the Medicare/SSI fraction prior to the 2004 rule.

The Provider(s) contend(s) that if CMS includes unpaid Medicare Part A days in the denominator of the Medicare/SSI fraction, then unpaid SSI eligible patient days must be included in the numerator of the Medicare/SSI fraction, utilizing SSI payment codes that reflect the individuals' eligibility for SSI – even if the individuals did not receive SSI payments, as a matter of statutory consistency.

The group issue statement for thirty-eight (38) cases[4] is as follows:

### Statement of the Issue
Whether the Secretary properly calculated the Provider's [DSH/SSI] percentage?

---

[4] PRRB Case Nos. 15-0384GC, 15-0360GC, 14-4116GC, 14-4296GC, 14-3952GC, 15-3037G, 16-1141G, 14-2215GC, 14-1302GC, 15-0784GC, 15-3173GC, 14-3947GC, 14-3109GC, 14-0632GC, 15-1153GC, 15-2587GC, 14-3836GC, 15-2273GC, 15-2932GC, 15-0733GC, 16-0247GC, 15-0522GC, 15-0646GC, 15-1020GC, 14-4102GC, 14-4351GC, 14-1238GC, 16-1988GC, 14-4359GC, 16-0439GC, 14-0948GC, 15-3374GC, 16-1834GC, 15-2395GC, 15-2917GC, 14-2380GC, 17-0803G, and 14-1024GC.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 4

### Statement of the Legal Basis

The Providers contend that the Lead MAC's determination of Medicare Reimbursement for their DSH Payments are not in accordance with the Medicare statute 42 U.S.C. § 1395ww(d)(5)(F)(i). The Providers further contend that the SSI percentages calculated by the Centers for Medicare and Medicaid Services ("CMS") and used by the Lead MAC to settle their Cost Report does not address all the deficiencies as described in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37, 44 (D.D.C. 2008) and incorporates a new methodology inconsistent with the Medicare statute.

The Providers challenge their SSI percentages based on the following reasons:

    1. Availability of MEDPAR and SSA records,
    2. Paid days vs. Eligible days,
    3. Not in agreement with provider's records,
    4. Fundamental problems in the SSI percentage calculation,
    5. Covered days vs. Total days and
    6. Failure to adhere to required notice and comment rulemaking procedures.

Case Nos. 13-3224GC and 13-3122GC reorganized the "reasons" (#6 became #8, with further explanation of types of days) and added two more "reasons" for challenging their SSI percentages.

    6. Non-covered days, ie. Exhausted Benefit ("EB"), Medicare Secondary Payor ("MSP") Days And Medicare Advantage, Medicare Managed Care, Medicare+Choice and/or Part C Days (Collectively "MA") Days; and
    7. CMS Ruling 1498-R

Six (6) cases[5] framed the Statement of the Issue differently:

Whether the Medicare/SSI fraction used in the Medicare [DSH] and LIP payment calculations accurately and correctly counted the correct number of patient days to be included in the numerator and denominator of the Medicare/SSI fraction calculation per the Medicare Statute at 42 U.S.C. § 1395ww(d)(5)(F)(vi)?

In their Statement of the Legal Basis, these six (6) cases listed the same original six "reasons" listed above for challenging their SSI percentages, but also added an additional paragraph:

---

[5] PRRB Case Nos. 17-1532GC, 16-2359GC, 17-1431G, 17-1810GC, 17-0834GC, and 17-1179GC.

The Provider also contends that CMS inconsistently interprets the term "entitled" as it is used in the statute. CMS requires SSI payment for days to be counted in the numerator but does not require Medicare Part A payment for days to be counted in the denominator. CMS interprets the term "entitled" broadly as it applies to the denominator by including patient days of individuals that are in some sense "eligible" for Medicare Part A (i.e. Medicare Part C, Medicare Secondary Payer and Exhausted days of care) as Medicare Part A days, yet refuses to include patient days associated with individuals that were "eligible" for SSI but did not receive an SSI payment.

Three cases[6] listed the same eight "reasons" for challenging their SSI percentages but expanded on several of the points with the arguments presented in the position papers, discussed *infra*.

For Case No. 14-1211GC the issue statement is as follows:

**Description of the issue**

***Understatement of Medicare disproportionate share ("DSH") reimbursement***

The MAC improperly accounted for certain types of patient days in calculating the Medicare DSH adjustment. The types of days at issue include, but are not limited to, SSI days, as further explained below.

The Medicare DSH calculation consists of two fractions.

The first fraction is known as the "Medicare fraction" or the "SSI fraction." The numerator of the Medicare fraction consists of the number of days for the period in question for which patients were entitled to both Supplemental Security Income benefits ("SSI") and Medicare Part A. The denominator of the Medicare fraction consists of the number of days for which patients were entitled to Medicare Part A benefits, regardless of whether they were also entitled to SSI benefits for those same days.

The second fraction of the Medicare DSH calculation is known as the "Medicaid fraction." The numerator of the Medicaid fraction consists of the number of days for patients who were eligible for Medicaid but not entitled to Medicare Part A benefits. The

---

[6] PRRB Case Nos. 13-2906GC, 13-3190GC, and 13-3011GC.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 6

denominator of the Medicaid fraction consists of the total number of patient days for the period.

SSI days -The Intermediary failed to correctly calculate the Medicare fraction of the Medicare DSH calculation. The computation of the SSI fraction for the year(s) at issue is incorrect due to systemic errors in both the method and execution of the MAC's calculations and has resulted in an ongoing understatement of the Medicare DSH payments owed by the Government to the Provider in this appeal. The methodological errors include, among others, instances in which the MAC failed to include all required "SSI" days in the numerator.

Further, the Providers retain the right to evaluate the propriety of requesting a change in the time period upon which the SSI calculation is based from the federal fiscal year to the provider's cost reporting period in accordance with 42 C.F.R. 412.106 (b)(3). Use of the federal fiscal year may have caused the MAC to understate SSI days and/or overstate Medicare Part A days and calculate an improperly low Medicare proxy and, consequently, an improperly low DSH percentage. This appeal, however, does not represent any formal request to have the data calculated on a hospital year end at this time. Once pertinent data is available to make such a determination and if a change is sought, the Providers will at that time pursue such a change.

Given the foregoing errors, the Intermediary's calculations were inconsistent with the Congressional intent to reimburse hospitals for treatment of all indigent patients when determining DSH program eligibility and reimbursement. The Providers are unable to determine whether the Medicare DSH payment is correct because they do not have access to all of the underlying information concerning the calculation of their payment.

This appeal is not limited to challenging audit adjustments. The SSI Days issue is also a challenge to the Secretary's underlying policy. This is because CMS calculates the SSI adjustment in its sole discretion; the MAC does not change or modify that calculation.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 7

### Legal Basis for the Appeal

42 U.S.C. Section 1395 ww(d)(5)(F), 42 C.F.R. Section 412.106, Section 405.1811, Section 405.1835, Medicare Intermediary Manual ("MIM") Section 3610.15, or any other applicable Medicare program statutes, regulations or guidelines.

Cases 14-2877GC and 14-3792GC have a slightly different Statement of the Group Issue in which the "Providers contend that the SSI percentages are erroneous because of systemic flaws in the data and match process used by CMS in determining the SSI percentages."  They note they have not been given access to the underlying SSI eligibility data used to determine their SSI percentages, and:

believe that CMS's determinations of the SSI percentages may be flawed in several ways, including the following:

- Failure to use updated SSI eligibility data and Medicare claims data;
- Omission of SSI records for forced pay cases;
- Failure to use personal identifiers such as social security numbers and patient names in matching Medicare claims data and SSI eligibility data; and
- Failure to verify the accuracy and validity of data files and data match programs.

The issue statement also discusses the exclusion of dual eligible days for people entitled to Medicare Part A but who did not have a payment made under Part A, and the inclusion of Part C days. It further cites specifically to various *Baystate* court cases.

Finally, Case 15-0563GC was established with the bifurcation of Case 10-1325GC.  Case 10-1325GC addressed NPRs issues prior to CMS Ruling 1498-R, which were subject to remand to have their SSI ratios recalculated.  When the group requested to directly add three Providers with NPRs issued after CMS Ruling 1498-R, the Board denied the request finding "the participants with appeals filed post-Ruling have received the updated SSI ratios and are not subject to a remand.  Because the pre-Ruling SSI issue is different than the SSI issue currently being raised in the post-Ruling cases," the Board denied their addition to Case 10-1325GC and formed Case 15-0563GC for the post-Ruling providers.   The issue statement from Case 10-1325GC, which is the same issue as Case 15-0563GC except applied to post-1498R Providers, however, specifically addresses Covered vs. Total Medicare Part A days.

### II.    Issue in Dispute - Providers' Preliminary Position Papers

All of these group appeals were filed between 2013 and 2019.  Most of the groups have filed Preliminary Position Papers ("PPPs"), and most of those were filed between February, 2023 and

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 8

December, 2023, many years later, which are materially identical.[7] They acknowledge that the Board "began bifurcating DSH related group appeals into five separate group appeals as follows: 1) SSI Fraction Systemic, 2) SSI Fraction Part C, 3) SSI Fraction Dual Eligible, 4) Medicaid Fraction Part C Days, and 5) Medicaid Fraction Dual Eligible Days."[8] They claim the issue in the instant position papers "addresses what a proper and consistent definition of the term 'entitled' will have on all five of these related issues."[9]

The PPPs begin by explaining that, in the FY 2005 IPPS Final Rule, CMS adopted a policy of including dual-eligible days in the SSI Fraction, "whether or not the beneficiary had exhausted Medicare Part A coverage."[10] This was a change from including only covered/paid days, and now including total days.[11] The Providers also discuss CMS Ruling 1498-R and the treatment of Part C Days, including the litigation from *Allina Health*.[12] The Providers seek to either restrict the denominator of the SSI/Medicare fraction to include only "covered" days as "entitled to Medicare Part A" or to include "paid" and "unpaid" SSI Days in the SSI Fraction Numerator.[13] They summarize that these appeals challenge the inconsistent use of "entitled" and the limited number of SSA Payment Status Codes used in determining the SSI Fraction numerator.[14] The PPPs expand on these points, with a large discussion on Part C Days, covered vs. total days, exhausted benefit days, and Medicare Secondary Payor days, as they all relate to "entitled to Medicare Part A" for dual eligible days in the SSI Fraction.[15]

The discussion then shifts to CMS Ruling 1498-R and the interpretation of "entitled to SSI" for the SSI Fraction. The Providers argue that "entitled" should be treated the same in both contexts, and that the post-*Baystate* data matching process is deficient for only including three SSA Status Codes to check for SSI entitlement.[16] They also briefly note that the identified errors in the data matching process are sufficient to prove the fact of injury, even if not the specific amount of injury, since CMS withholds the data necessary to verify the SSI Fractions. They argue that this should shift the burden to the Secretary to prove why the Providers' allegations should not be accepted.[17]

---

[7] In PRRB Case Nos. 14-2877GC, 15-3037G, 16-1141G, 14-2215GC, 13-2906GC, 15-1153GC, 13-3224GC, 13-3011GC, 17-1431G, 13-3122GC, and 15-0563GC, Preliminary Position Papers were filed between July, 2015 and July, 2018. Pursuant to Board Rule 25.3 (2015), only the first page of the position paper was filed with the Board.
[8] *E.g.*, PRRB Case No. 15-0384GC, Providers' Preliminary Position Paper, 2 (July 19, 2023).
[9] *Id.* at 3.
[10] *Id.* at 5.
[11] *Id.* at 5-6.
[12] *Id.* at 6-8.
[13] *Id.* at 8.
[14] *Id.* at 8-9.
[15] *Id.* at 18-50.
[16] *Id.* at 50-92.
[17] *Id.* at 77-78.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 9

### III.    Relevant Law

#### A.    *Authorities Raised in the Providers' Position Papers and EJR Requests*

The authorities cited in the Providers' PPPs include several court decisions, including *Baystate* and *Allina (*both *v. Price* and *v. Sebelius)*, several statutory provisions within the Medicare Act, 42 C.F.R. § 412.106(d) and two publications within the Federal Register from 2005 and 2010.[18] Importantly, *Advocate Christ* is not mentioned in the PPPs.  The Requests for EJR, however, focus on some of those items and then address *Advocate Christ*, in depth.  There are several authorities relevant to legal issues distinct from those raised in the Providers' PPPs.  The Board briefly discusses each of these authorities below.

##### 1.    *The Baystate Litigation*[19]

After the Medicare DSH statutory provisions were enacted in 1984, CMS (then known as the Health Care Financing Administration ("HCFA")) announced that the Secretary of Health and Human Services, rather than hospitals, would be solely responsible for computation of the Medicare fraction because the data necessary to calculate the Medicare fraction is voluminous and much of this data needed to be obtained from another agency, SSA.[20]  CMS noted that, as of 1986, the data sources for the computation of the Medicare fraction included approximately 11 million billing records from the Medicare inpatient discharge file and over 5 million records from the SSI file compiled by SSA.[21]  To compute the Medicare fraction, CMS had to match individual Medicare billing records to individual SSI records.[22]  Considering the administrative burdens and complexity of the data matching process, CMS concluded that the Secretary would be responsible for the data matching process, which she would conduct retrospectively for every eligible Medicare hospital on a "federal fiscal year" basis—that is, based on discharges occurring in the federal fiscal year.[23]  CMS notifies Medicare contractors of the SSI ratios after they are calculated.  CMS currently makes this notification by posting the resulting SSI percentages on its website.  Medicare contractors then use the posted SSI ratios to calculate the Medicare DSH percentage to determine each qualifying hospital's Medicare DSH payment adjustment.[24]

In *Baystate*, the plaintiff alleged that the Secretary's process to identify and gather the data necessary to calculate each hospital's SSI ratio was deficient and the Court remanded the case to the Administrator for further action.  The Board notes that this case discusses the Secretary's

---

[18] *Id.* at 4-5, 6-7, 9-10, 19, 41-42, and 50-51.
[19] *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. Nov. 07, 2008), *judgment entered*, 587 F. Supp. 2d 44 (D.D.C. Dec. 8, 2008), *dismissing appeal*, 2009 WL 604186 (D.C. Cir. 2009).
[20] 51 Fed. Reg. 31454, 31459 (Sept. 3, 1986).
[21] *Id.*
[22] *Id.*
[23] *Id.* at 31459-31460; 42 C.F.R. § 412.106(b).
[24] 42 C.F.R. § 412.106(b)(5); 42 C.F.R. § 405.1803.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 10

historical practice of basing "entitled to . . . SSI" under 42 C.F.R. § 412.106(b)(2) on actual payment of SSI cash benefits.[25]

On April 28, 2010, the Secretary through CMS acted on the *Baystate* remand order and published CMS Ruling CMS-1498-R ("Ruling 1498-R"). Specifically, the Ruling stated that CMS had implemented the *Baystate* remand order by recalculating the plaintiff's SSI fractions and Medicare DSH payment adjustments using a revised data matching process that used "updated and refined SSI eligibility data and Medicare records, and by matching individuals' records with reference to SSNs as well as HICANs and Title II numbers."[26]  The Ruling also stated that "in the FY 2011 proposed rule, CMS is proposing to adopt the same revised data matching process" for use with all hospitals and that "[i]n the forthcoming FY 2011 IPPS final rule, CMS expects to respond to public comments filed on the proposed new data matching process, make any changes to such matching process that seem appropriate, and adopt finally a new data matching process."[27]  Finally, CMS stated that it would "use that new data matching process in calculating SSI fractions and DSH payments for specific claims that are found to qualify for relief under this Ruling."[28]

Consistent with Ruling 1498-R, CMS published the new data matching process in the FY 2011 proposed rule published on May 4, 2010.[29]  The proposed rule includes references to the Secretary's historical practice of basing "entitled to . . . SSI" under 42 C.F.R. § 412.106(b)(2) on actual payment of SSI cash benefits.[30]

---

[25] *Baystate* began with a hearing before the Board.  *See Baystate Med. Ctr. v. Mutual of Omaha Ins. Co.*, PRRB Dec. No. 2006-D20 (Mar. 17, 2006), *modified by*, CMS Adm'r Dec. (May 11, 2006).  The Board heard extensive testimony on the Secretary's then-existing data match process.  This included testimony from several SSA employees on the data tapes historically sent from SSA to CMS that included "42 monthly indicators (ones and zeros) denoting the payment or non-payment of Federal SSI cash benefits during the period covered by the SSA tape." *Id.* at 11 (citations omitted).  Further, this testimony established that SSA's program would "assign a '1' to a month if the CMPH field shows one of two payment codes, C01 (current pay status) or M01 (manual or forced pay), and the FAM field reflects an amount due for the month" and that "[o]therwise, the program assigns a '0' to that month."  *Id.*  The provider in *Baystate* contested among other things: (1) "the omission of SSI records relating to individuals who received a forced payment from an SSA filed office; (2) "the omission of SSI days associated with individuals whose SSI benefits were temporarily on hold or in suspense when SSA ran each year's SSI tape;" (3) "the omission of SSI days associated with individuals whose benefits were restored or retroactively after SSA ran each year's tape;" and (4) "the omission of individuals who were entitled to non-cash Federal SSI benefits."  *Id.* at 23.  The Board's discussion of these contentions confirms SSI days were counted when there were actual SSI cash benefits.  *See id.* at 26-30.  The CMS Administrator's decision and the ensuing decision of the D.C. District Court also contain references to the Secretary's policy.  *See, e.g.,* Adm'r Dec. at 5, 16, 39, 41, 48-49; 545 F. Supp. 2d at 28-29 n.13 & n.17, 36-39.
[26] CMS-1498-R at 5.
[27] *Id.*
[28] *Id.* at 5-6.
[29] 85 Fed. Reg. 23852, 24002-24007 (May 4, 2010).
[30] *See, e.g.*, 75 Fed. Reg. at 24003 (discussing SSI cash payment issues discussed in the Baystate decision), 24003-24004 (discussing the proposed matching process where "[t]he SSI eligibility file serves as the system of record for whether or not SSA made a payment of SSI benefits to an individual who applied for SSI"), 24004-06 (discussing the time of the matching process including how "it is important to find an appropriate balance between administrative finality (that is, the final settlement of a hospital's cost report) and the inclusion of retroactive SSI

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 11

The Secretary finalized that data matching process in the FY 2011 IPPS final rule published on August 16, 2010 ("FY 2011 Final Rule").[31]  Significantly, in the preamble to the FY 2011 Final Rule, CMS acknowledged a public comment that:  (1) requested that "CMS include both paid and unpaid days for both SSI entitlement and Medicare entitlement such that there would be consistency between the numerator and denominator of the SSI fraction"; and (2) provided examples of "several SSI codes that represent individuals who were eligible for SSI but not eligible for SSI payments, that should be included as SSI-entitled for purposes of the data match process."[32]  CMS responded in detail to this comment and explained that CMS interprets SSI entitlement to correspond with any month for which an individual *receives* payment of SSI benefits.  In this regard, CMS stated that the three SSI codes denoted as C01, M01, and M02 "accurately captures all SSI-entitled individuals during the month(s) they are entitled to receive SSI benefits."[33]  CMS explicitly rejected the inclusion of other SSA codes because "SSI entitlement can change from time to time" and none of these codes "would be used to describe an individual who was entitled to receive SSI benefits during the month that one of these codes was used."[34]  Finally, in the preamble, CMS confirms that "[t]he same data matching process [used for FY 2011 and beyond] will be used to calculate SSI fractions for cost reporting periods covered under the Ruling [1498-R]."[35]

While the new data matching process established in the preamble to the FY 2011 IPPS Final Rule was effective October 1, 2010 (*i.e.*, for FY 2011 and forward), Ruling 1498-R directed that the Medicare Contractors apply "the same, unitary relief" consisting of SSI fractions that the Secretary had calculated using the new "suitably revised" data matching process to:  (1) any Medicare cost report that had not been settled; and (2) all properly pending Medicare DSH appeals of the SSI fraction data matching process issue.[36]  The Ruling noted that hospitals dissatisfied with the initial or revised NPR issued using the new SSI ratios in the Medicare DSH adjustment calculation could seek administrative and judicial review provided they met the jurisdictional and procedural requirements of 42 U.S.C. § 1395oo, the Medicare regulations, and other agency rules and guidelines.[37]   In the FY 2011 IPPS Final Rule, the Secretary explicitly recognized that "[t]he data matching process provisions of the Ruling would apply to . . . open cost reports for cost reporting periods beginning prior to October 1, 2010 (that is those preceding the effective date of the FY 2011 IPPS final rule)."[38]

---

eligibility determinations and the lifting of SSI payment suspensions by using the best and latest available SSI eligibility data at the time of cost report settlement").
[31] 75 Fed. Reg. 50041, 50280-50281. (Aug. 16, 2010).
[32] *Id.* at 50280.
[33] *Id.* at 50280-50281.
[34] *Id.*  This included all codes with the "S" prefix indicating suspended payment; codes beginning with "N" for nonpayment; code "E01" indicating that the individual had countable income which eliminated SSI payment; and code "E02" indicating that the patient was not entitled to SSI benefits during that month but became entitled during a subsequent month.
[35] *Id.* at 50285.
[36] CMS-1498-R at 6-7, 31.
[37] *Id.* at 28, 31.
[38] 75 Fed. Reg. at 24006.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 12

Finally, on April 22, 2015, CMS published Ruling 1498-R2 modifying and amending Ruling 1498-R by allowing hospitals to elect whether to use new Medicare SSI fractions calculated on the basis of "total days" or "covered days" for cost reports involving patient discharges *prior* to October 1, 2004.[39]

However, neither Ruling 1498-R nor Ruling 1498-R2 divest the Board of jurisdiction in these appeals since the NPRs at issue were issued after Ruling 1498-R and since the fiscal years at issue are not covered by Ruling 1498-R2.  As a result of the new regulation and new data match process, CMS calculated SSI percentages for the Providers for the fiscal years at issue.[40]

>    *2.   MMA § 951*

MMA § 951, which was enacted in 2003, directed the Secretary to "arrange to furnish to subsection (d) hospitals . . . the data necessary for such hospitals to compute the number of patient days used in computing the disproportionate patient percentage . . . for that hospital for the current cost reporting year."[41]  CMS implemented MMA § 951 as part of the FY 2006 IPPS Final Rule and stated the policy to make available the MedPAR LDS data used to calculate providers' DSH Medicare/SSI fractions:

>        In accordance with section 951 of Pub. L. 108-173, as we proposed
>        in the FY 2006 IPPS proposed rule, we are changing the process
>        that we use to make Medicare data used in the DSH calculation
>        available to hospitals. Currently, as stated above, CMS calculates
>        the Medicare fraction for each section 1886(d) hospital using data
>        from the MedPAR LDS (as established in a notice published in the
>        August 18, 2000 Federal Register (65 FR 50548)). The MedPAR
>        LDS contains a summary of all services furnished to a Medicare
>        beneficiary, from the time of admission through discharge, for a
>        stay in an inpatient hospital or skilled nursing facility, or both; SSI
>        eligibility information; and enrollment data on Medicare
>        beneficiaries. The MedPAR LDS is protected by the Privacy Act of
>        1974 (5 U.S.C. 552a) and the Privacy Rule of the Health Insurance
>        Portability and Accountability Act of 1996 (Pub. L. 104-191). The
>        Privacy Act allows us to disclose information without an
>        individual's consent if the information is to be used for a purpose
>        that is compatible with the purpose(s) for which the information
>        was collected. Any such compatible use of data is known as a
>        "routine use." In order to obtain this privacy-protected data, the
>        hospital must qualify under the routine use that was described in the

---

[39] CMS-1498-R2 at 2, 6.
[40] SSI ratios are published and can be accessed at https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/dsh.
[41] Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, § 951, 117 Stat. 2066, 2427 (2003).

August 18, 2000 Federal Register. Currently, a hospital qualifies under the routine use if it has an appeal properly pending before the Provider Reimbursement Review Board (PRRB) or before an intermediary on the issue of whether it is entitled to DSH payments, or the amount of such payments. Once determined eligible to receive the data under the routine use, the hospital is then required to sign a data use agreement with CMS to ensure that the data are appropriately used and protected, and pay the requisite fee.

Beginning with cost reporting periods that include December 8, 2004 (within one year of the date of enactment of Pub. L. 108-173), we will arrange to furnish, consistent with the Privacy Act, MedPAR LDS data for a hospital's patients eligible for both SSI and Medicare at the hospital's request, regardless of whether there is a properly pending appeal relating to DSH payments. We will make the information available for either the Federal fiscal year or, if the hospital's fiscal year differs from the Federal fiscal year, for the months included in the 2 Federal fiscal years that encompass the hospital's cost reporting period. Under this provision, the hospital will be able to use these data to calculate and verify its Medicare fraction, and to decide whether it prefers to have the fraction determined on the basis of its fiscal year rather than a Federal fiscal year. The data set made available to hospitals will be the same data set CMS uses to calculate the Medicare fractions for the Federal fiscal year.

Because we interpret section 951 to require the Secretary to arrange to furnish these data, we do not believe that it will continue to be appropriate to charge hospitals to access the data. These changes will require CMS to modify the current routine use for the MedPAR LDS to reflect changes in the data provided and the circumstances under which they are made available to hospitals. In a future Federal Register document, we will publish the details of any necessary modifications to the current routine use to implement section 951 of Pub. L. 108-173.[42]

Further, CMS has stated that it is prohibited by Federal law and regulations from releasing the data files of SSI eligibility information provided to CMS by SSA:

In accordance with the published routine use for the SSI system of records maintained by the SSA, CMS signs a data use agreement with SSA to receive the SSI data file for the sole purpose of administering the Medicare and Medicaid programs. While we

---

[42] 70 Fed. Reg. 47278, 47439-40 (Aug. 12, 2005).

understand the commenters' concern, CMS is strictly prohibited from disclosing SSI eligibility information. In addition, SSA is prohibited from disclosing this information by Federal law and regulations. While we cannot release the SSI eligibility information provided by SSA, we are permitted to disclose the results of the data match of SSI eligibility information with the Medicare inpatient hospital billing data as a routine use for the MedPAR LDS system of records. The routine use allows us to release the information to hospitals that sign a data use agreement that limits the uses and protects the privacy of the SSI/MedPAR LDS match information.[43]

### 3. *Pomona Valley Litigation*[44]

The D.C. Circuit Court found that the hospital in the *Pomona Valley* case had made a *prima facie* showing that the CMS data matching process missed a number of Medicare patient days attributable to patients who qualified for SSI benefits.[45]  The D.C. Circuit Court found that, "[g]iven the strength of the hospital's showing, and the absence of any countervailing evidence, the Board's conclusion that Pomona had failed to prove an undercount was unreasonable."[46]  The D.C. Circuit Court then remanded the case back to CMS and ultimately to the Board based on its finding:

> Although Pomona's case compels a ruling in its favor "if undisputed," *we do not foreclose the possibility that CMS may be able to dispute it successfully*.  **And if CMS does introduce evidence to dispute it**, the burden of proof will remain with *Pomona*. . . . All we hold today is that Pomona's showing was robust enough to require some response from the agency.[47]

### 4. *The Empire Health Litigation*

In *Empire Health Found. v. Price* ("*Empire*"),[48] the U.S. District Court for the Eastern District of Washington ("Washington District Court") reviewed the question of "the validity" of the Secretary's FY 2005 IPPS final rule with regard to the Secretary's interpretation of the phrase "entitled to benefits under [Medicare Part A] in 42 U.S.C. § 1395ww."[49]  In *Empire*, the hospital had alleged that the FY 2005 IPPS final rule amending 42 C.F.R. § 412.106(b)(2) was substantively and procedurally invalid.[50]  The Washington District Court noted that the Secretary misstated the then-existing policy until approximately three days before the close of the comment period for the

---

[43] *Id.* at 47440.
[44] *Pomona Valley Hosp. Med. Ctr. v. Becerra*, 82 F.4th 1252 (D.C. Cir. 2023), *aff'g*, 2020 WL 5816486 (D.D.C. 2020).
[45] *Pomona Valley*, 82 F.4th at 1259.
[46] *Id.* at 1260.
[47] *Id.* at 1262 (emphasis added and citation omitted).
[48] 334 F. Supp. 3d 1134 (E.D. Wash. 2018).
[49] *Id.* at 1141.
[50] *Id.*

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 15

FY 2005 IPPS proposed rule and that the inaccuracy of the policy statement necessarily distorted the context of the proposed rule. The Washington District Court determined that, without an accurate context in which to view the Secretary's proposed rule, interested parties cannot know what to expect and have no basis on which to make comments. Further, the Washington District Court pointed out that interested parties could not have reasonably anticipated the Secretary's rulemaking contained a misstatement. Consequently, the Washington District Court found that the Secretary's notice failed to satisfy the procedural rulemaking requirements of the APA[51] and that the regulation is procedurally invalid.[52]

The U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") reviewed the Washington District Court's decision in *Empire*[53] and reversed that Court's finding that the revision made by the FY 2005 IPPS Final Rule to 42 C.F.R. § 412.106(b)(2)(i) failed to satisfy the procedural rulemaking requirements of the APA.[54] Rather, the Ninth Circuit found that this revision "was a logical outgrowth of the notice and the comments received" and that it "met the APA's procedural requirements."[55] However, the Ninth Circuit then reviewed the substantive validity of this revision and determined that it was bound by the previous Ninth Circuit's 1996 decision in *Legacy Emanuel Hospital and Health Center v. Shalala* ("*Legacy Emanuel*")[56] wherein the Ninth Circuit considered the meaning of the words "entitled" and "eligible" in tandem as those words are used in the statutory description of the Medicaid fraction at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Specifically, in *Legacy Emanuel*, the Ninth Circuit "interpreted the word 'entitled' to mean that a patient has an 'absolute right . . . to payment'" and "the word 'eligible' to mean that a patient simply meets the Medicaid statutory criteria."[57] In *Empire*, the Ninth Circuit noted that, in the FY 2005 IPPS Final Rule, the Secretary adopted a different meaning to "entitled" that more closely aligned with the meaning of the word "eligible."[58] According, in *Empire*, the Ninth Circuit held that "[b]ecause we have already construed the unambiguous meaning of 'entitled' to [Medicare]" in 42 U.S.C. § 1395(d)(5)(F)(vi), we hold that the [FY 2005 IPPS Final Rule's] contrary interpretation of that phrase is substantively invalid pursuant to APA."[59] Accordingly, the Ninth Circuit took the following actions to implement its holding:

1. It affirmed the Washington District Court's order vacating the FY 2005 IPPS Final Rule as it relates to the deletion of the word "covered" from 42 C.F.R. § 412.106(b)(2)(i); and

2. It "reinstat[ed] the version of 42 C.F.R. § 412.106(b)(2)(i) which embraced only 'covered' patient days" (*i.e.*, reinstated the rule previously in force).

---

[51] *Id*. at 1162.
[52] *Id*. at 1163.
[53] 958 F.3d 873 (9th Cir. 2020), *reh'g en banc denied* (9th Cir. Oct. 20, 2020).
[54] *Id.* at 884.
[55] *Id.*
[56] 97 F.3d 1261, 1265-66 (9th Cir. 1996).
[57] 958 F.3d at 885 (citing and quoting *Legacy Emanuel*).
[58] *Id.* at 886.
[59] *Id.*

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 16

The Secretary appealed the Ninth Circuit decision and the U.S. Supreme Court subsequently issued its decision in *Empire Health*[60] finding that the Secretary "correctly construes the statutory language at issue."[61]  The Court found that the structure of the DSH provisions supported the Secretary, summarizing that "Counting everyone who qualifies for Medicare benefits in the Medicare fraction—and no one who qualifies for those benefits in the Medicaid fraction—accords with the statute's attempt to capture, through two separate measurements, two different segments of a hospital's low-income patient population."[62]  It found that being "entitled" to Medicare benefits means meeting the basic statutory criteria, not actually receiving payment for a given day's treatment.[63]  Nor did the Court find any credence in the argument that "entitled" was modified by the statute by adding "(for such days)."  Though this parenthetical does direct the Secretary to evaluate a patient's status on a given day, it does not invite an evaluation of whether a patient *received* Part A payments, but rather whether it is qualified to receive part A payments.[64]  Based on the foregoing, the Court reversed the Ninth Circuit's *Empire* decision and remanded the case for further proceedings.[65]

On remand, the Ninth Circuit addressed the appellant's "remaining challenge."[66]  Specifically, it noted that neither the Ninth Circuit or the Supreme Court addressed the appellant's alternative argument concerning the Secretary's calculation of patient days for those patients "entitled to supplemental security income [SSI] benefits," which also factors into the Medicare fraction.[67]  The argument claims that there is an inconsistency in between "entitled to Medicare" and "entitled to SSI."  As discussed above, "entitled to Medicare" Part A has been deemed to mean legally entitled to benefits, regardless of whether payment was actually made, but the Secretary's policy for SSI benefits includes those patient days only when SSI benefits are paid to an individual on a given month, not merely when they are eligible for benefits.[68] Consideration of this issue is now pending before the District Court for the Eastern District of Washington.[69]

Notwithstanding the ongoing proceedings, as of the date of the instant decision, the Secretary's position with respect to the validity of the regulation at 42 C.F.R. § 412.106(b)(2)(i) (as modified by the FY 2005 IPPS Final Rule) has not changed.

---

[60] 142 S. Ct. 2354 (2022).

[61] *Id.* at 2362.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 2365.

[65] *Id.* at 2368.

[66] *Empire Health Found. v. Azar*, 2022 WL 17411382, *1 (9th Cir. 2022).

[67] *Id.*

[68] *Id.*

[69] *Id.* at *2.  Following the Supreme Court's remand in *Empire*, the district court initially dismissed this alternative argument for lack of subject matter jurisdiction.  The Ninth Circuit reversed that decision and ordered the district court "to consider the argument in the first instance and to obtain supplemental briefing on the impact of the Supreme Court's ruling . . . ."  *Id.*

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 17

5. <u>*The Advocate Christ*[70] *Litigation*</u>

The issue in *Advocate Christ* involves CMS' determination of which patients are "entitled to" both Medicare Part A and SSI benefits for purposes of the Medicare fraction of the DSH calculation.

The Medicare program is an insurance program where an individual is automatically "entitled" to Medicare Part A when the person reaches age 65 and is entitled to Social Security benefits or becomes disabled and had been entitled to disability benefits for 24 calendar months.[71]  In addition, the Medicare program provides that certain qualifying individuals with end stage renal disease are entitled to Medicare Part A.[72]

In contrast, the SSI program is a federal cash assistance program for low-income individuals who are aged, blind, or disabled,[73] administered by the Social Security Administration ("SSA").  The statutory provisions governing SSI, generally, do not use the term "entitled" to SSI benefits.  Rather, the SSI statutory provisions typically refer to whether an individual is "eligible for benefits."[74]  In order to be "eligible" for SSI benefits, a person must be:  (1) 65 years of age or older, blind or disabled; (2) a lawful resident of the United States; (3) have limited income and resources; (4) not be fleeing to avoid prosecution for a crime or violating a condition of parole; and (5) file an application for benefits.[75]

Unlike entitlement for Medicare Part A benefits, an individual who is currently eligible for SSI benefits may later become *in*eligible for SSI benefits.  In this regard, SSA conducts periodic redeterminations to ensure continued eligibility[76] and may terminate,[77] suspend[78] or stop payments to individuals who are either temporarily or permanently ineligible for payment of SSI benefits.[79]  In particular, SSI eligibility may be lost if a person no longer meets the basic requirements.  For example, an individual may lose SSI eligibility if the individual is no longer disabled or the individual meets one of the following reasons set forth in §§ 416.207-416.216:

1. The individual fails to give the SSA permission to contact financial institutions;[80]

2. The individual fails to apply for other benefits to which the individual may be entitled;[81]

---

[70] *Advocate Christ Med. Ctr. v. Becerra*, 80 F.4th 346, 349, 350 (D.C. Cir. 2023), *cert. granted*, No. 23-715 (U.S. June 10, 2024).
[71] 42 U.S.C. § 426.
[72] 42 U.S.C. § 426-1.
[73] 42 U.S.C. § 1382.
[74] 42 U.S.C. §§ 1381a, 1382(a) (emphasis added).
[75] 20 C.F.R. § 416.202.
[76] 20 C.F.R. § 416.204.
[77] 20 C.F.R. §§ 416.1331-1335.
[78] 20 C.F.R. §§ 416.1320-1330.
[79] 20 C.F.R. § 1320.
[80] 20 C.F.R. § 416.207.
[81] 20 C.F.R. § 416.210.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 18

3. The individual fails to participate in drug or alcohol addiction treatment;[82]

4. The individual is absent from the United States for more than 30 days;[83] or

5. The individual becomes a resident of a public institution or prison.[84]

In addition, under certain circumstances, SSA may not pay benefits for administrative reasons, such as removal of a representative payee, an unknown address for the beneficiary, or because of income from a previous month.[85]

While *Empire Health*, discussed *supra*, dealt with the interpretation of "entitled" to Medicare benefits as described in the FY 2005 Final Rule, *Advocate Christ Med. Ctr. v. Becerra*[86] concerns a challenge to the substantive and procedural validity of the FY 2011 IPPS Final Rule, specifically the interpretation of "entitled" to SSI benefits as described therein.[87] Both the D.C. District Court and D.C. Circuit Court have found that CMS's interpretation of "entitled" to SSI benefits is valid, and *certiorari* has been granted by the Supreme Court, where the case is still pending.[88]

~ ~ ~

In summary:

- *Baystate* found that the data matching process from the FY 2005 Final Rule, which implemented MMA § 951, did not use the best available data, and resulted in the modified data matching process published in the FY 2011 Final Rule.

- MMA § 951 mandates that CMS must give hospitals the information necessary to compute the number of patient days used in computing their DPPs.

- *Pomona Valley* found that the Provider in that case had shown discrepancies between the number of days in their DPP and California Medicaid data. The case has been remanded to the Board to determine whether CMS can refute the evidence showing these discrepancies.

- *Empire Health* concerned the substantive and procedural validity of the FY 2005 IPPS Final Rule and its interpretation of "entitled" to Medicare benefits. The Supreme Court has found the interpretation was valid.

---

[82] 20 C.F.R. § 416.214.
[83] 20 C.F.R. § 416.215.
[84] 20 C.F.R. § 416.211.
[85] *See* SSA Program Operations Manual ("POMS") § SI 02301.201 (describing certain SSI post-eligibility events on the internet at https://secure.ssa.gov/apps10/poms.nsf/lnx/0502301201).
[86] 80 F.4th 346, 349, 350 (D.C. Cir. 2023), *cert. granted*, No. 23- 715 (U.S. June 10, 2024).
[87] 80 F.4th at 350-351.
[88] 144 S. Ct. 2629 (2024).

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 19

- ▪ *Advocate Christ* concerned the substantive and procedural validity of the FY 2011 IPPS Final Rule and its interpretation of "entitled" to SSI benefits.  The D.C. Circuit has affirmed the validity of that interpretation, and the case is pending before the Supreme Court.

### B.  A Group May Contain Only One Issue

The regulations governing group appeals are located at 42 C.F.R. § 405.1837.  In subsection (a), the regulation makes clear that a group may only have one issue:

> (a) *Right to Board hearing as part of a group appeal: Criteria*. A provider (but no other individual, entity, or party) has a right to a Board hearing, as part of a group appeal with other providers, with respect to a final contractor or Secretary argue determination for the provider's cost reporting period, **only if**—
>
> (1) The provider satisfies individually the requirements for a Board hearing under § 405.1835(a) or § 405.1835(c), except for the $10,000 amount in controversy requirement in § 405.1835(a)(2) or § 405.1835(c)(3).
>
> (2) **The matter at issue in the group appeal involves a <u>single</u>** question of fact or **interpretation of law**, regulations, or CMS Rulings that is common to each provider in the group; and
>
> (3) The amount in controversy is, in the aggregate, $50,000 or more, as determined in accordance with § 405.1839 of this subpart.[89]

To this end, the group appeal content requirements in subsection (c)(3) specify that a group appeal request "must include . . . a precise description of the *one* question of fact or *interpretation of law*, regulations, or CMS Rulings *that is common to the particular matter at issue* in the group appeal."[90]  Consistent with this requirement that a group *contain only one issue*, subsection (f) clearly sets forth the "Limitations on group appeals" as follows:

> (1) <u>After the date of receipt</u> by the Board of a group appeal hearing request under paragraph (c) of this section, *a provider may not add other questions of fact or law to the appeal*, <u>regardless</u> of whether the question is common to other members of the appeal (as described in § 405.1837(a)(2) and (g) of this subpart).

---

[89] (Bold and underline emphasis added and italics in original.)
[90] (Bold and underline emphasis added and italics in original.)

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 20

(2) The Board may not consider, in one group appeal, more than one
question of fact, interpretation of law, regulations, or CMS Rulings
that is common to each provider in the appeal.  If the Board finds
jurisdiction over a group appeal hearing request under § 405.1840 of
this subpart-

      (i)      The Board must determine whether the appeal involves
specific matters at issue that raise more than one factual or
legal question common to each provider; and

      (ii)     When the appeal is found to involve more than one factual
or legal question common to each provider, the Board must
assign a separate case number to the appeal of each
common factual or legal question and conduct further
proceedings in the various appeals separately for each
case.[91]

Pursuant to its rulemaking authority under 42 U.S.C. § 1395oo(e), and in accordance with 42
C.F.R. § 405.1837, the Board adopted Rule 8 regarding the framing of issues for adjustments
involving multiple components and Rule 13 regarding common group issues. Board Rule 8 states
in pertinent part:[92]

8.1 – General

Some issues may have multiple components.  To comply with the
regulatory requirement to specifically identify the items in dispute, ***each
contested component must be appealed as a separate issue and described
as narrowly as possible*** using the applicable format outlined in Rule 7.
See common examples below.

8.2 – Disproportionate Share Cases (e.g., dual eligible, general assistance,
charity care, HMO days, etc.)[93]

Board Rule 13 (Common Group Issue) states in pertinent part:

The matter at issue ***must involve a <u>single</u>*** common question of fact or
interpretation of law, regulation or CMS policy or ruling.[94]

---

[91] (Emphasis added.)

[92] The appeals in the instant decision were filed between 2013 and 2019, and while different versions of the Board's
Rules were in effect when the different appeals were filed, the Rules referenced herein are materially identical
across all versions. The PRRB Board Rules and all of their previous iterations can be found at
https://www.cms.gov/medicare/regulations-guidance/provider-reimbursement-review-board/prrb-rules-and-board-
orders (last visited Apr. 2, 2025).

[93] (Emphasis added).

[94] *See also* PRRB Board Rule 15.2 (where the Lead Intermediary must advise the Board of its position as to
"whether the group appeal establishes a single common issue"); Model Form B – Group Appeal Request (Section 9,
where the form reminds the filer that the appeal must only involve "one issue per group"; Model Form D  and Model

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 21

Accordingly, the governing regulation (42 C.F.R. § 405.1837) and Board Rules 8 and 13 regarding the scope of group appeals are clear: A group appeal is limited to one specific issue that is established upon the initiation of the appeal.

### C.  Expedited Judicial Review ("EJR") Requests May Not Expand Issues

The regulations governing requests for expedited judicial review are located at 42 C.F.R. § 405.1842. In subsection (b), the regulation makes clear that a group of providers may seek EJR of a legal question or a specific matter that has been properly appealed to the Board. Specifically, 405.1842(b)(2) states in pertinent part:

> (2) ***Initiating EJR procedures.*** A provider or group of providers may request the Board to grant EJR of a specific matter or matters ***under appeal***, or the Board on its own motion may consider whether to grant EJR of a specific matter or matters ***under appeal***.

Accordingly, where a matter has not been properly filed "under appeal" before the Board, it may not be considered for expedited judicial review.

### IV.  <u>Decision of the Board</u>

The Board is required to grant an EJR request if the Board determines the following conditions are satisfied:

    (i)     [t]he Board has jurisdiction to conduct a hearing on the specific matter at issue in accordance with § 405.1840 of this subpart.

    (ii)    The Board lacks the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is a challenge either to the constitutionality of a provision of a statute, or to the substantive or procedural validity of a regulation or CMS Ruling.[95]

A group of Providers generally have a right to a hearing before the Board with respect to specific items claimed on timely filed cost reports if:

- They are dissatisfied with final determinations of the Medicare Contractor;
- The request for a hearing of each Provider is filed within 180 days of the date of receipt of the final determinations.  Providers must appeal from a "final determination" related to their cost report or payment, which includes an NPR, a Revised NPR, or failure to timely

---

Form E (Certification B, where the Group Representative must attest that they have reviewed 42 C.F.R. § 405.1837 and that they have a good faith belief that addition request meets the single common issue requirement for a group appeal).
[95] 42 C.F.R.§ 405.1842(f)(1). *See also*, 42 U.S.C. § 1395oo(f)(1).

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 22

issue a final determination; [96]
- The matter at issue involves single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group; and
- The amount in controversy is, in the aggregate, $50,000 or more.[97]

### A.  Scope of the Issue in the EJR Requests and Appealed Issues from Issue Statements

Based on its review of the EJR Request, the Board finds that, by their own admission, the Providers have requested EJR over the "*Advocate Christ*" issue:

> For purposes of EJR, the Providers take the same position as the petitioner in *Advocate Christ*, namely, that the inpatient days associated with individuals who were found eligible for SSI prior to, or for, the month(s) of their inpatient stay, and who have not been terminated from the SSI program by SSA with respect to such month(s) should be included in the numerator of the Medicare Fraction.[98]

However, the Board finds that the initial appeal requests ***did not*** appeal the *Advocate Christ* issue – instead they have appealed a combination of the SSI *Baystate* issue and the *Empire* dual eligible days issue, which does not comply with the single common issue requirement for a group appeal.  Nonetheless, the group of providers initiated their appeals categorizing them as appeals of systemic errors impacting their respective DSH calculations.  It is well-established that systemic errors or omissions in the data matching process are the subject of *Baystate*.  Thus, any references to the interpretation of "entitled" as it relates to SSI benefits is outside the scope of *Baystate*. Thus, even if the *Advocate Christ* issue was briefed in the group's Preliminary Position Papers, which is debatable, as the PPPs do not mention *Advocate Christ* by name, while *Baystate* is mentioned numerous times, such does not relate back to the original issue statements in the appeals.

The Board notes that 42 C.F.R. § 405.1853(b)(1) addresses position paper filings and states: "[a]fter any preliminary narrowing of the issues, the parties must file position papers *in order to narrow the issues further*."  In accordance with this regulation, preliminary position papers are limited to the issues originally appealed and cannot be expanded outside of the scope of the initial appeal.  The development of subsequent or new case law should only be included in position papers if it is specific to the originally appealed issue and does not expand the scope of that issue.

Moreover, PRRB Board Rule 8 requires that multiple components of issues be "described as narrowly as possible" and here, *Baystate* cannot be expanded into an *Advocate Christ* issue. The

---

[96] 42 U.S.C. § 1395oo(a)(1)(A)(i); *see also Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 144-145 (D.C. Cir. 1986).
[97] 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835 – 1840.
[98] *See, e.g.*, PRRB Case No. 15-0384GC, Request for Expedited Judicial Review at 2.

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 23

Board further notes that the Providers, in their EJR Request state "[t]he Issue for purposes of this EJR request is whether regulation 42 C.F.R. 412.106(b)(1) is invalid by requiring a patient to be due a payment for [SSI] for the month(s) he or she has an inpatient stay…"[99]  The Providers appear to believe the issue can be different for different "purposes."  The issue must be the issue which was originally appealed in the case and cannot change depending on the intent of the Providers at any given time.  As noted, *supra*, 42 C.F.R. § 405.1837 makes clear a provider cannot "add other questions of fact or law to the appeal."[100]  Further, the Board cannot "consider, in one group appeal, more than one question of fact, interpretation of law, regulations, or CMS Rulings that is common to each provider in the appeal."[101]  The EJR Requests also state that "the Providers are not seeking EJR at this time on the question of whether CMS properly implements its policy by requesting only records of those individuals who are assigned one of only three SSI payment status codes."[102]  The Providers appear to be under the impression that they have other issues which they are challenging and *may* seek EJR upon at another time, but this violates the requirements that a group appeal must have a single common issue.  Accordingly, the Board **denies** the EJRs in their entirety as the issue in the request for EJR is not the issue in the group appeals.

The Board finds that the group issue in Case Nos. 15-0384GC, 15-0360GC, 14-4116GC,   14-4296GC, 14-3952GC, 15-3037G, 16-1141G, 14-2215GC, 14-1302GC, 15-0784GC, 15-3173GC, 14-3947GC, 14-3109GC, 14-0632GC, 15-1153GC, 15-2587GC, 14-3836GC, 15-2273GC, 15-2932GC, 15-0733GC, 16-0247GC, 15-0522GC, 15-0646GC, 15-1020GC, 14-4102GC, 14-4351GC, 14-1238GC, 16-1988GC, 14-4359GC, 16-0439GC, 14-0948GC, 15-3374GC, 16-1834GC, 15-2395GC, 15-2917GC, 14-2380GC, 17-0803G, and 14-1024GC is the *Baystate* issue.  The issue statement for these appeals discusses the ***calculation*** of the SSI percentage, as well as the deficiencies and errors of the SSI percentage, as was argued in *Baystate*.

The same is true for the issue statement in Case Nos. 13-2906GC, 13-3190GC, and 13-3011GC which listed the same general "reasons" for challenging their SSI percentages, all of which related to the ***calculation*** of the SSI percentage, as well as the deficiencies and errors of the SSI percentage, as was argued in *Baystate*.  In fact, in at least two cases,[103] while not mentioned by the Providers' Representative in its current request for EJR, ***the Board has already denied a similar request for EJR and defined the scope of the issue with regard to these issue statements.***  On July 26, 2018, the Board denied EJR in these two cases finding the Providers had appealed multiple issues.  In its decisions to deny EJR in these cases, the Board ***specifically*** held "the only issue pending in this group is the SSI Systemic Errors Issue as it relates to utilizing the best available data when matching the MedPAR to the information provided by SSA."[104]

---

[99] *Id.* at 1.
[100] 42 C.F.R. § 405.1837(f)(1).
[101] 42 C.F.R. § 405.1837(f)(2).
[102] *See e.g.*, PRRB Case No. 13-0384GC, Request for Expedited Judicial Review at 2.
[103] PRRB Case Nos. 13-2906GC and 13-3190GC.
[104] *See e.g.*, PRRB Case No. 13-2096GC, Denial of EJR at 2 (Jul. 26, 2018).

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 24

To the extent that the issue statements in any of the groups listed in **Appendix A** also added references to CMS Ruling 1498-R and additional types of days (*e.g.*, exhausted benefits, Medicare Secondary Payor, and Medicare Advantage days) (*e.g.*, Cases 13-3224GC and 13-3122GC), the Board finds that neither is part of the *Baystate* issue nor the *Advocate Christ* issue. Instead, these are common arguments related to the *Empire* issue but, as a group can have only one issue, the Board is limiting the issue in these appeals to *Baystate.*

The Board finds that Case Nos. 17-1532GC, 16-2359GC, 17-1431G, 17-1810GC, 17-0834GC, and 17-1179GC, in their actual "statement of the issue" refer to the ***denominator as well as*** the numerator.  As *Advocate Christ* deals ***only*** with the numerator of the SSI fraction, the issue statements in these cases therefore cannot be read to encompass the *Advocate Christ* issue. Instead, the Board finds that they are in fact the *Empire* issue, which dealt with both the numerator and denominator of the SSI fraction.

With regard to Case 19-1003GC, the Board finds that the group issue statement makes a similar *Baystate* argument but also includes additional arguments which were raised in the *Empire* litigation.  Neither of these distinct legal issues are the issue for which Providers are currently requesting EJR, namely the issue pending in *Advocate Christ*.

PRRB Case No. 14-1211GC is also appealing the *Baystate* issue.  The issue statement in this appeal refers to the calculation and errors of not including all "required" days in the numerator. It then reiterates the definitions of the two fractions as presented in 42 C.F.R. § 412.106(b) (Medicare fraction = "entitled to both [SSI] benefits and Medicare Part A" and Medicaid fraction = "eligible for Medicaid but not entitled to Medicare part A."[105])  After defining the fractions, the issue statement addresses SSI days, but makes no mention at all of eligibility/entitlement, as would be the issue in *Advocate Christ*. Instead, it focuses on "systemic errors in both the method and the execution of the MAC's calculations."[106]  Therefore, the Board finds that this, also, is the *Baystate* issue and not *Advocate Christ*.

The issue statement for Case 15-0563GC specifically addresses Covered vs. Total Medicare ***Part A days***, which is not the *Advocate Christ* issue being pursued via EJR.

Finally, the issue statement for Cases 14-2877GC and 14-3792GC argues CMS is using a flawed data matching process.  It discusses dual eligible days for people ***entitled to Medicare Part A*** but who did not have a payment made under Part A and the inclusion of ***Part C*** days in the SSI Fraction.  Neither of these issues address the interpretation of "entitled to SSI" in the SSI Fraction, which is the issue in *Advocate Christ* and the issue for which EJR is sought.

---

[105] *See* PRRB Case No. 14-1211GC, Group Appeal Request.
[106] *Id.*

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 25

## V.    <u>Jurisdictional Challenges</u>

Jurisdictional issues were raised by the Medicare Contractor's designated representative, Federal Specialized Services ("FSS"), or discovered by the Board, in several cases. As the Board is denying the Providers' request for EJR at this time, it has not reached any decision on jurisdiction over any individual providers, groups or jurisdictional challenges as part of this decision, but will address jurisdictional issues in the future as necessary.

## VI.    <u>Conclusion</u>

The Providers have requested EJR based on the issue in *Advocate Christ,* however, the initial appeal requests *did not* appeal this issue.  Therefore, the Board **denies** the EJR requests in their entirety for the reasons stated herein.  As such, the cases listed in **Appendix A** remain pending for the *Baystate* issue.

Review of this determination may be available under the provisions of 42 U.S.C. §1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877 upon final disposition of the appeals.

<u>Board Members Participating:</u>

Kevin D. Smith, CPA
Ratina Kelly, CPA
Nicola E. Musgrave, Esq.
Shakeba DuBose, Esq.

FOR THE BOARD:

4/2/2025



X Kevin D. Smith, CPA
_____
Kevin D. Smith, CPA
Board Chair
Signed by: Kevin D. Smith -A

cc:    Dean Wolfe, Noridian Healthcare Solutions (J-F)
        Byron Lamprecht, WPS Government Health Administrators, (J-5)
        Dana Johnson, Palmetto GBA c/o National Government Services, Inc. (J-M)
        Danelle Decker, National Government Services, Inc. (J-K)
        Michael Redmond, Novitas Solutions, Inc. c/o GuideWell Source (J-H)
        Cecile Huggins, Palmetto GBA (J-J)
        Pamela VanArsdale, National Government Services, Inc. (J-6)
        Lorraine Frewert, Noridian Healthcare Solutions c/o Cahaba Safeguard Administrators (J-E)
        Wilson Leong, FSS

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al.* (54 cases – See **Appendix A**)
Page 26

**Appendix A**
**(54 QRS EJR Requests Filed 3/8 – 3/14/2025)**

| PRRB Case Number | PRRB Case Name |
|---|---|
| 15-0384GC | *Mercy Health System 2012 SSI Systemic CIRP Group* |
| 15-0360GC | *QRS BHCS 2010 DSH SSI Percentage CIRP Group* |
| 14-4116GC | *QRS Houston Methodist CYs 2006 & 2008 DSH SSI Percentage CIRP Group* |
| 14-2877GC | *Ardent Health Services 2010 Post 1498-R SSI% Data Match Process CIRP Group* |
| 14-4296GC | *QRS MSHA 2011 DSH SSI Percentage CIRP Group* |
| 14-3952GC | *QRS MSHA 2010 DSH SSI Percentage CIRP Group* |
| 15-3037G | *QRS 2011 DSH SSI Percentage Group 2* |
| 16-1141G | *QRS 2013 DSH SSI Percentage Group* |
| 14-2215GC | *QRS Novant 2009 DSH SSI Percentage CIRP Group* |
| 13-2906GC | *QRS Novant 2007 SSI Percentage Baystate Errors CIRP Group* |
| 14-1302GC | *QRS BJC 2009 DSH SSI Percentage (Systemic Errors) CIRP* |
| 15-0784GC | *QRS UW Medicine 2011-2012 SSI - Systemic CIRP Group* |
| 17-1532GC | *QRS BSWH 2013 DSH SSI Percentage CIRP Group* |
| 15-3173GC | *QRS BSWH 2012 DSH SSI Percentage CIRP Group* |
| 14-3792GC | *Ardent Health Services 2012 Post 1498R SSI% Data Match Process CIRP Group* |
| 14-3947GC | *QRS Wellmont HS 2010 DSH SSI Percentage CIRP Group* |
| 14-3109GC | *QRS Wellmont HS 2009 DSH SSI Percentage (Baystate) CIRP Group* |
| 13-3190GC | *QRS Novant 2006 DSH SSI Percentage* |
| 14-0632GC | *QRS Novant 2008 DSH SSI Percentage Systemic Errors CIRP Group* |
| 16-2359GC | *QRS Novant 2013 DSH SSI Percentage CIRP Group* |
| 15-1153GC | *QRS Novant 2010 DSH SSI Percentage CIRP Group* |
| 15-2587GC | *QRS BJC 2012 DSH SSI Percentage CIRP* |
| 14-3836GC | *QRS BJC 2011 DSH SSI Percentage CIRP Group* |
| 13-3224GC | *QRS WFHC 2009 DSH SSI Percentage CIRP Group* |
| 15-2273GC | *Asante CYs 2012 & 2013 DSH SSI Percentage CIRP Group* |
| 15-2932GC | *QRS Houston Methodist 2011 DSH SSI Percentage (Systemic Errors) CIRP Group* |
| 15-0733GC | *QRS BHCS 2011 DSH SSI Percentage CIRP Group* |
| 16-0247GC | *QRS Wellmont HS 2012 DSH SSI Percentage (Systemic Errors) CIRP Group* |
| 15-0522GC | *QRS Wellmont HS 2011 DSH SSI Percentage CIRP Group* |
| 15-0646GC | *QRS BJC 2010 DSH SSI Percentage CIRP Group* |
| 13-3011GC | *QRS BJC 2007 DSH SSI Baystate Errors CIRP Group* |
| 19-1003GC | *St. Luke's Health CYs 2013 & 2016 DSH SSI Percentage CIRP Group* |
| 17-1431G | *QRS 2013 DSH SSI Percentage Group 2* |
| 15-1020GC | *QRS WFHC 2012 DSH SSI Percentage (Late Issuance of NPR) CIRP Group* |
| 14-4102GC | *QRS WFHC 2011 DSH SSI Percentage CIRP Group* |
| 13-3122GC | *QRS WFHC 2008 DSH SSI Percentage CIRP Group* |

QRS 2005 – 2013 SSI Percentage/Baystate Groups
EJR Determination
PRRB Case Nos.: 15-0384GC *et al*. (54 cases – See **Appendix A**)
Page 27

| 14-4351GC | *QRS PHC CYs 2009 & 2010 DSH SSI Percentage (Systemic Errors) CIRP Group* |
| 14-1238GC | *QRS PHC 2008 DSH SSI Percentage (Systemic Errors) CIRP* |
| 16-1988GC | *QRS Multicare 2013 SSI Percentage CIRP* |
| 15-0563GC | *QRS UW 2008 - 2009 Post 1498 SSI Percentage CIRP* |
| 14-4359GC | *QRS Houston Methodist 2009 DSH SSI Percentage CIRP Group* |
| 17-1810GC | *QRS Houston Methodist 2013 DSH SSI Percentage (Systemic Errors) CIRP Group* |
| 16-0439GC | *QRS Houston Methodist 2012 DSH SSI Percentage CIRP Group* |
| 14-0948GC | *QRS St. Luke's CYs 2008 - 2009 DSH SSI Percentage CIRP Group* |
| 17-0834GC | *QRS BJC 2013 DSH SSI Percentage CIRP* |
| 15-3374GC | *QRS Mercy Health 2013 SSI Percentage CIRP Group* |
| 16-1834GC | *WFHC CY's 2007 & 2013 SSI Percentage CIRP Group* |
| 15-2395GC | *QRS Scottsdale HC 2012 DSH SSI Percentage CIRP* |
| 14-1211GC | *BS & W CYs 2008 & 2009 SSI Percentage Group* |
| 17-1179GC | *QRS BSWH 2006 DSH SSI Percentage CIRP Group* |
| 15-2917GC | *QRS Houston Methodist 2010 DSH SSI Percentage (Systemic Errors) CIRP Group* |
| 14-2380GC | *QRS DCH 2008 DSH SSI Percentage (Baystate) CIRP* |
| 17-0803G | *QRS 2005 DSH SSI Percentage Group* |
| 14-1024GC | *QRS WVUHS 2007 DSH SSI Percentage CIRP Group* |